GUIDRY, Justice
 

 We granted the writ application to determine whether the court of appeal erred in reversing the trial court's ruling granting the plaintiff's special motion to strike defendant's reconventional demand for defamation, pursuant to La. Code Civ. Pro. art. 971, the so-called anti-SLAPP statute, where the appellate court found that plaintiff's petition did not involve a "public issue." For the reasons expressed below, we find the court of appeal was correct in reversing the trial court's ruling. We hold that La. Code Civ. Pro. art. 971(F)(1)(a), which states that "[a]ny written or oral statement or writing made before a legislative, executive, or judicial body" is an "[a]ct in furtherance of a person's right of petition or free speech ... in connection
 with a public issue," must nonetheless satisfy the requirement of La. Code Civ. Pro. art. 971(A)(1), that such statements be made "in connection with a public issue...."
 

 FACTS AND PROCEDURAL HISTORY
 

 Philip Shelton, M.D. (hereinafter "Dr. Shelton") married Judith Shelton (hereinafter "Mrs. Shelton") in 2001. During their marriage, the couple each owned a life insurance policy that named the other as the beneficiary. At some point, Mrs. Shelton was diagnosed with cirrhosis of the liver and Hepatorenal Syndrome (rapid deterioration of kidneys) as a result of alcoholism. In July 2011, Mrs. Shelton was admitted to Ochsner Baptist Medical Center for treatment and was soon discharged to Woldenberg Village, an inpatient assisted living facility. Mrs. Shelton died on December 31, 2011, at the age of 64.
 

 After Mrs. Shelton's death, Dr. Shelton learned that, in July 2011, she had changed her beneficiary to her personal assistant/paralegal/friend, Nancy Pavon. In November 2013, Dr. Shelton filed a Petition to Nullify Change of Beneficiary. He alleged Mrs. Shelton had lacked the capacity to execute a change of beneficiary form due to her poor health, including dementia, confusion, disorientation, and personality changes. Alternatively, he alleged Mrs. Shelton's signature on the change of beneficiary form was a forgery or had been obtained through undue influence by Ms. Pavon.
 

 In response, Ms. Pavon filed an answer and reconventional demand alleging Dr. Shelton's petition constituted defamation
 
 per se
 
 . In response, Dr. Shelton filed a Special Motion to Strike pursuant to La. Code Civ. Pro. art. 971. Ms. Pavon opposed the motion to strike, arguing that it should be dismissed as a matter of law because Dr. Shelton's petition to nullify did not involve a public issue. She also argued that a motion to strike was not the proper mechanism to dismiss her defamation claim.
 

 After a hearing and taking the matter under advisement, the trial court granted Dr. Shelton's special motion to strike. The trial court reasoned that, under La. Code Civ. Pro. art. 971(A)(1), the moving party must first satisfy the burden of proof that the "cause of action against [the moving party] arise [s] from any act of that person in furtherance of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue...." Thus, the trial court noted it must first consider whether Dr. Shelton's action, that is, the petition to nullify change of beneficiary, arises from an act in the exercise of his right of petition or free speech in connection with a public issue. The trial court concluded Dr. Shelton's petition fell into the category of such "acts" as defined in La. Code Civ. Pro. art. 971(F)(1)(a), because it is a "written ... statement or writing made before a ... judicial proceeding." The trial court then noted that pursuant to Article 971(A)(1) the burden shifted to the non-mover, Ms. Pavon, to show a probability of success on her claim for defamation. The trial court ultimately concluded she could not. The trial court then awarded attorney fees to Dr. Shelton as the prevailing party on the motion, pursuant to La. Code Civ. Pro. art. 971(B).
 

 Ms. Pavon sought review in the court of appeal, which ultimately reversed the trial court's ruling. The court of appeal observed that the trial court was correct in first determining whether Dr. Shelton's petition to nullify the change of beneficiary constituted an act in furtherance of his right to petition in connection with a public issue. However, the court of appeal disagreed with the trial court's conclusion that Dr. Shelton met his prima facie burden under Article 971. The court of appeal
 found the language of Article 971(F)(1)(a) was ambiguous because it was susceptible to different meanings. Relying on the Fifth Circuit's decision in
 
 Yount v. Handshoe
 
 , 14-919 (La. App. 5 Cir. 5/28/15),
 
 171 So.3d 381
 
 ,
 
 writ denied
 
 , 15-2302 (La. 2/19/16),
 
 187 So.3d 462
 
 , the court of appeal held that, in light of the legislative history, relevant case law, and the statutory language as a whole, La. Code Civ. Pro. art. 971(F)(l)(a) requires the statements made in a judicial proceeding be made in connection with a public issue.
 
 Shelton v. Pavon
 
 , 16-0758 (La. App. 4 Cir. 2/15/17),
 
 212 So.3d 603
 
 . The court of appeal concluded Dr. Shelton's petition was not an exercise of his right of petition in connection with a public issue.
 

 Dr. Shelton sought writs in this court, asserting the Fourth Circuit's decision was in conflict with rulings from the First, Second, and Third Circuits. He cited, among others,
 
 Gibbs v. Elliott
 
 , 12-2121 (La. App. 1 Cir. 9/13/13),
 
 186 So.3d 667
 
 ;
 
 Jones v. Delta Fuel Co.
 
 , 48885 (La. App. 2 Cir. 05/28/14),
 
 141 So.3d 352
 
 ; and
 
 Jeansonne v. Roy
 
 , 13-741 (La. App. 3 Cir. 3/5/14),
 
 156 So.3d 134
 
 , 142,
 
 reversed in part
 
 , 14-0729 (La. 6/30/14),
 
 147 So.3d 1116
 
 ), all of which held that pleadings filed into the record of a judicial proceeding fall within the definition of "[a]n act in furtherance of the person's right of petition or free speech" as contemplated by Article 971(F)(1)(a). We granted Dr. Shelton's writ application to resolve a conflict in the circuits.
 
 Shelton v. Pavon
 
 , 17-0482 (La. 2/15/17),
 
 212 So.3d 603
 
 .
 

 LAW and DISCUSSION
 

 Resolving this conflict requires us to interpret Article 971, and so we begin with the language of the statute itself.
 
 M.J. Farms, Ltd. v. Exxon Mobil Corp.
 
 , 07-2371 (La. 7/1/08),
 
 998 So.2d 16
 
 , 27 ). "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ. Code art. 10. Generally, words are given their prevailing meaning, but "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ. Code arts. 11 and 12.
 

 Louisiana Code of Civil Procedure Article 971 provides in pertinent part:
 

 A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
 

 (2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
 

 (3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
 

 B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
 

 * * *
 

 C. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding
 the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.
 

 * * *
 

 F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
 

 (1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
 

 (a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
 

 (b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
 

 (c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
 

 (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
 

 Our appellate courts interpret this statute as requiring a two-part, burden-shifting analysis, which the trial court had in fact performed.
 
 See, e.g.
 
 ,
 
 Thomas v. City of Monroe Louisiana,
 
 36,526 (La. App. 2 Cir. 12/18/02),
 
 833 So.2d 1282
 
 ;
 
 Aymond v. Dupree,
 
 05-1248 (La. App. 3 Cir. 4/12/06),
 
 928 So.2d 721
 
 . In cases where right of petition and free speech activities form the basis of the claims, the mover must first establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. La. Civ. Code Pro. art. 971(A)(1) ;
 
 Yount v. Handshoe
 
 , 14-919, pp. 6-7,
 
 171 So.3d at
 
 385-86 ;
 
 Thinkstream, Inc. v. Rubin,
 
 06-1595 p. 9 (La. App. 1 Cir. 09/26/07),
 
 971 So.2d 1092
 
 , 1100,
 
 writ denied,
 
 07-2113 (La. 1/7/08),
 
 973 So.2d 730
 
 . If the mover makes a
 
 prima facie
 
 showing that his comments were constitutionally protected and in connection with a public issue, the burden shifts to the plaintiff to demonstrate a probability of success on the claim.
 

 Id.
 

 In cases where more than one claim is alleged in the petition, the courts examine the probability of success of each claim individually.
 
 Darden v. Smith,
 
 03-1144 p. 8 (La. App. 3 Cir. 06/30/04),
 
 879 So.2d 390
 
 , 397,
 
 writ denied
 
 , 04-1955 (La 11/15/04),
 
 887 So.2d 480
 
 ;
 
 Melius v. Keiffer,
 
 07-0189 p. 5 (La. App. 4 Cir. 03/12/08),
 
 980 So.2d 167
 
 , 172,
 
 writ not considered
 
 , 08-1039 (La. 8/29/08),
 
 989 So.2d 90
 
 . If the plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail.
 
 Darden,
 
 supra.
 

 Dr. Shelton contends the court of appeal's ruling departs from the rules of statutory interpretation, citing La. Civ. Code art. 10, because it does not conform to the purpose of the law. In his view, Article 971(F)(1) sets forth specific examples of what the legislature meant by an "act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue," expressly providing that such acts include:
 

 (a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
 

 (b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
 

 Applying the article's plain and unambiguous language to this case, and adhering to the legislature's express intent in La. Acts 1999, No. 734, § 2 that Article 971 be broadly construed, Dr. Shelton argues his Petition to Nullify Change of Beneficiary and his allegations of forgery and undue influence on the part of Ms. Pavon constitute written statements before a judicial proceeding as defined in Article 971(F)(1)(a). He contends Ms. Pavon's defamation claim against him thus arises from the allegations set forth in his petition, and, therefore, Ms. Pavon's defamation claim is subject to a special motion to strike under Article 971. However, he claims the court of appeal's opinion rewrites the law, because the court concluded that La. Code Civ. Pro. art. 971(F)(l)(a) requires the statements made in a judicial proceeding be made in connection with a public issue. Dr. Shelton asserts this interpretation effects a change in the law.
 

 Ms. Pavon supports the ruling of the Fourth Circuit below, which properly resorted to this court's rules of statutory interpretation after determining the language of La. Code Civ. Pro. art. 971 is ambiguous and its application leads to absurd consequences. Ms. Pavon asserts the lower court correctly found that Article 971 (F)(1)(a) was ambiguous, that reading it broadly to apply to any act in furtherance of one's right of petition leads to absurd results, and that it was therefore superseded by the operative clause of Article 971, namely subparagraph 971(A)(1), which mandates that the act in furtherance of the person's right of petition or free speech must be made in connection with a public issue. She also points out that the Fifth Circuit in
 
 Yount
 
 similarly held that Article 971(F)(1)(b) was ambiguous and leads to absurd consequences and was therefore subject to the operative clause of Article 971(A)(1).
 

 The parties have correctly noted that Article 971(F)(1)(a) defines an act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue as "[a]ny written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." As observed by the Fourth and Fifth Circuits, though the latter with regard to Article 971(F)(1)(b), this language can be read to provide that a special motion to strike will apply to
 
 any
 
 issue brought before a judicial proceeding, because it was made in furtherance of the person's right of petition. On the other hand, Article 971(F)(1)(a) may as easily be interpreted to mean that a special motion to strike will apply
 
 only
 
 to statements or writings before a judicial proceeding in connection with a
 
 public issue
 
 . Clearly there is ambiguity in this language given that all five of our circuit courts have reviewed and interpreted this language, with two circuits adopting the latter view, and three circuits adopting the former.
 

 Ultimately, pursuant to our duty to resolve such impasses, we agree that a reading of the statute to apply to any issue made before a judicial proceeding, without a requirement that it be connected to a public issue, can lead to absurd results. As the
 
 Yount
 
 court explained with regard to La. Code Civ. Pro. art. 971(F)(1)(b), which is analogous, under such an interpretation "
 
 any
 
 cause of action arising from
 
 any
 
 written or oral statement made in connection with
 
 any
 
 kind of government activity or proceeding would be subject to special motions to strike regardless of whether or not the statements were made in connection with a public issue."
 
 Yount
 
 , 14-919, p. 8,
 
 171 So.3d at 387
 
 . Interpreting subsection (F)(1)(b), the
 
 Yount
 
 court concluded that "any party could defame or invade the privacy of a person involved in a divorce
 proceeding, traffic violation, child custody dispute, marriage, mortgage registration, passport application, or driver's license renewal and be immunized from legal repercussions of damage to others through the use of an extraordinary procedural remedy."
 

 Id.
 

 , 14-919, p. 8-9,
 
 171 So.3d at 387
 
 . That same logic applies to subsection (F)(1)(a), as the court below found.
 

 We nevertheless acknowledge the views of the other circuits. The First Circuit in
 
 Gibbs v. Elliott
 
 , for example, found that the plain language of Article 971(F)(1)(a) and (b) provides that an act "in connection with a public issue" includes by definition "[a]ny written ... statement or writing made before a ... judicial proceeding" or "made in connection with an issue under consideration or review by a ... judicial body."
 
 Gibbs,
 
 12-2121, p. 6,
 
 186 So.3d at 672
 
 . In
 
 Gibbs
 
 , a plaintiff's defamation suit was dismissed pursuant to a special motion to strike under La. Code Civ. Pro. art. 971. The defamation suit in
 
 Gibbs
 
 was based on allegations made against Gibbs in a succession matter, wherein it was alleged that Gibbs had engaged in efforts to transfer assets for purposes of evading judgment creditors. In dismissing Gibbs's claim, the First Circuit reviewed the assignment of error that the Article 971 special motion to strike should have been denied because the alleged defamatory statements did not arise out of a matter of public significance, but rather was related to a dispute between private parties. The First Circuit court declined to interpret the provisions of La. Code Civ. Pro. art. 971(F)(1)(a) and (b) as requiring statements made before a judicial proceeding or in connection with an issue under consideration or review by a judicial body must also be related to matters "in connection with a public issue."
 

 Ibid.
 

 The First Circuit recently upheld its view, disagreeing with the Fifth Circuit's holding in
 
 Yount. See
 

 Aloise v. Capital Management Consultants, Inc.
 
 , 16-1174 (La. App. 1 Cir. 4/12/17),
 
 2017 WL 1378223
 
 .
 
 [1]
 
 The
 
 Aloise
 
 court disagreed with
 
 Yount
 
 that, unless the provisions of Article 971(F)(1)(a) and (b) were interpreted as requiring statements made in judicial proceedings to also be made in connection with a public issue, any party could defame the privacy of a person in a variety of situations. In the
 
 Aloise
 
 court's view, Article 971 was enacted by the legislature as a procedural right to be used in the early stages of litigation to screen out meritless claims bought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. 16-1174, p. 8, citing
 
 Thinkstream,
 

 971 So.2d at 1100
 
 .
 

 There is some support for that view in the language of Article 971(A), which limits the special motion to strike only to a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech...." Defamation suits, when filed against a petitioner who has alleged fraud or the like, as in this case, clearly seem to fall within the rubric of suits intended to chill the litigant's right of free speech and right to petition for redress of grievances. As the concurring judge in
 
 Aloise
 
 pointed out: " Articles 971(F)(1)(a) and (b) statutorily define a protected act to include statements made before a judicial proceeding or in connection with an issue under consideration by a judicial body-that is, statements made during the course of litigation or in connection with an issue under consideration in litigation. So, it appears that the right to litigate is in itself a matter of
 public concern."
 
 Aloise, supra
 
 , McDonald, J., concurring.
 

 Given the competing viewpoints among our lower courts as to how to interpret the plain language of the statute,
 
 [2]
 
 it is no surprise that there is similarly a divergence of views on what the legislature intended. As La. Civ. Code art. 10 instructs, when the language of the law is susceptible to different meanings, we must interpret the law as having the meaning that best conforms to the purpose of the law.
 

 The
 
 Yount
 
 court examined the history of Article 971, which evolved from Louisiana's Anti-SLAPP statute:
 

 Code of Civil Procedure Article 971 is Louisiana's Anti-SLAPP statute. 'SLAPP' is an acronym for Strategic Lawsuit Against Public Participation, a term first coined by Professors George W. Pring and Penelope Canan to describe generally meritless suits brought by large private interests to deter common citizens from exercising their constitutional right to petition or to punish them for doing so. Pring,
 
 SLAPPs: Strategic Lawsuits Against Public Participation,
 

 7 Pace Envtl. L.Rev. 3
 
 (1989). Courts have difficulty identifying these suits which masquerade as ordinary lawsuits, most often in the form of defamation or a business tort.
 

 Id.
 

 SLAPP suits consist of a civil complaint or counterclaim (for monetary damages and/or injunction) filed against non-governmental individuals and/or groups because of their communications to a government body, or the electorate on an issue of some public interest or concern.
 

 Id.
 

 Typical examples of SLAPP suits include cases brought by 1) police, teachers, and other public officials and employees against their critics; 2) landlords against tenants reporting problems to the city health inspectors; 3) businesses against consumers reporting problems with their products or services; and 4) by dumps, toxic waste incinerators, bars, and other less-than-attractive enterprises against their NIMBY ("Not-In-My-BackYard") homeowner opponents.
 

 Id.
 

 At their heart, SLAPP suits threaten a citizen's right to petition because the mere filing of the suit limits public participation in the political process.
 

 In response to the growing prevalence of such suits and recognizing that traditional legal remedies such as abuse of process or malicious prosecution claims and motions for summary judgment were inadequate tools to ameliorate the problem, states enacted legislation creating the special motion to strike. This extraordinary procedural remedy limits discovery, dismisses meritless claims quickly, and awards attorney's fees to the prevailing party. California was the first state to adopt an anti-SLAPP statute in 1992, followed by many other states, including Louisiana in 1999 with Act 734.
 

 Yount
 
 , pp. 9-10,
 
 171 So.3d at 387-88
 
 (footnotes omitted).
 

 The legislature expressly stated its intent behind Article 971 : "The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and this participation should not be chilled through abuse of judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly."
 

 1999 La. Acts 734
 
 , § 2. The legislature thus expressed its desire to encourage participation in matters of public significance, which suggests Article 971 is intended to protect statements made in connection with public rather than private issues under consideration by a government body. The
 
 Yount
 
 court resourcefully collected and reviewed Louisiana cases to demonstrate the types of issues that would be protected under the special procedures of Article 971, noting that suits involving private disputes between private parties have generally been found to fall outside the ambit of Article 971.
 
 Yount
 
 , pp. 11-12,
 
 171 So.3d at 388-89
 
 .
 

 Having completed our review, and giving due respect to our colleagues on the appellate courts, we must conclude that La. Code Civ. Pro. art. 97l(F)(l)(a) applies to any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, so long as it is made "in connection with a public issue." In
 
 Connick v. Myers
 
 ,
 
 461 U.S. 138
 
 , 146,
 
 103 S.Ct. 1684
 
 , 1690,
 
 75 L.Ed.2d 708
 
 (1983), the United States Supreme Court described speech on matters of public concern as speech "relating to any matter of political, social, or other concern to the community."
 

 With regard to the merits of the dispute before us, the court of appeal correctly found that Dr. Shelton's petition to nullify a change in beneficiary to his wife's life insurance policy is a private dispute involving private parties, and not a matter of public concern or significance. Therefore, Dr. Shelton did not satisfy his initial burden of demonstrating that his petition is an act in furtherance of his right of petition "in connection with a public issue" as required by Article 971(A)(1).
 

 Finally, the court of appeal in this case awarded reasonable attorney fees and costs to Ms. Pavon as the prevailing party pursuant to La. Code Civ. Pro. art. 971(B), to be determined by the trial court on remand. Dr. Shelton asserts in this court that the court of appeal erred in awarding Ms. Pavon attorney fees and costs as the prevailing party under La. Code Civ. Pro. art. 971(B), citing this court's decision in
 
 Jeansonne v. Roy
 
 , 14-0729 (La. 6/30/14),
 
 147 So.3d 1116
 
 , and arguing the trial court had properly granted his special motion to strike. Ms. Pavon distinguishes
 
 Jeansonne
 
 , arguing this court reversed the award of attorney fees in
 
 Jeansonne
 
 because the appellate court itself had fixed the amount rather than remanding the matter to the district court for it to determine reasonable attorney fees and costs.
 

 We do not find
 
 Jeansonne
 
 necessarily instructive on this issue. There, the plaintiff sued an attorney and a funeral home alleging the attorney, by misleading the court, had improperly orchestrated an exhumation of the plaintiff's daughter for an autopsy. The trial court sustained the defendant attorney's exception of no cause of action, but denied the defendant attorney's Article 971 special motion to strike the allegations against him and accompanying request for attorney fees. The court of appeal affirmed the trial court's ruling sustaining the exception of no cause of action, but reversed the trial court's denial of the special motion to strike and awarded attorney fees in the amount $2500. This court denied the plaintiff's writ application, but granted the application in part to reverse the award of attorney fees, stating the court of appeal had erred in awarding attorney fees pursuant to Article 971. Because the
 
 Jeansonne
 
 court did not explain the basis of its ruling, we find it of little value as to whether attorney fees in the instant case were properly awarded by the court of appeal, to be determined on remand by the trial court.
 

 In the instant case, Dr. Shelton filed a special motion to strike Ms. Pavon's allegations
 against him; the trial court granted Dr. Shelton's motion and awarded him attorney fees and costs. The appellate court reversed that ruling, finding that Dr. Shelton had not met his initial burden of proof because the statements in question were not made in furtherance of his right to petition in connection with a public issue.
 
 Shelton v. Pavon
 
 , 16-0758, p. 11,
 
 212 So.3d at
 
 611 Other than citing
 
 Jeansonne
 
 and arguing that he should have prevailed, Dr. Shelton makes no other argument in his brief regarding attorney fees and costs. Accordingly, we decline to review the matter further. Because Ms. Pavon was ultimately "a prevailing party" on the Article 971 special motion to strike, we find the court of appeal correctly awarded her reasonable attorney fees and costs, to be determined by the trial court on remand.
 
 See
 

 Yount
 
 , p. 14,
 
 171 So.3d at 390
 
 .
 

 CONCLUSION
 

 After reviewing the applicable law, we hold that La. Code Civ. Pro. art. 971(F)(1)(a), which states that "[a]ny written or oral statement or writing made before a legislative, executive, or judicial body" is an "[a]ct in furtherance of a person's right of petition or free speech ... in connection with a public issue," must nonetheless satisfy the requirement of La. Code Civ. Pro. art. 971(A)(1), that such statements be made "in connection with a public issue...." We therefore conclude the court of appeal was correct in reversing the trial court's ruling granting Dr. Shelton's special motion to strike, and in awarding reasonable attorney fees and costs to Ms. Pavon as the prevailing party, to be determined by the trial court on remand. Accordingly, the judgment of the court of appeal is affirmed.
 

 AFFIRMED
 

 A writ application is currently pending in this court:
 
 Aloise v. Capital Management Consultants, Inc.
 
 , No. 2017-C-0784, filed on May 12, 2017.
 

 The federal district court has recently agreed with
 
 Yount's
 
 reasoning in
 
 Schmidt v. Cal-Dive International, Inc.,
 

 183 F.Supp.3d 784
 
 (W.D. La. 2016).